WEAVER, J.
(concurring in part and dissenting in part). I concur in the majority’s holding that a worker may bring a claim against a nonemployer defendant under the Civil Rights Act[1] if the worker can establish that the nonemployer defendant affected or controlled a term, condition, or privilege of the worker’s employment. Ante at 389. But I dissent from the majority’s conclusion that plaintiff failed to present a genuine issue of material fact that defendant affected or controlled a term, condition, or privilege of plaintiffs employment. As noted by the majority, when plaintiff reported the incidents to her union steward, she stated that she was advised that if she reported the incidents to defendant, defendant would “ ‘turn around and stab you in the back and you [would] end up losing your job.’ ” Ante at 377. While this statement standing alone would probably not be sufficient to establish that defendant did, in fact, affect or control a term, condition, or privilege of plaintiffs employment, it does raise a question whether defendant had that ability. Therefore, I would allow the parties to present evidence on this issue and let the question go to the jury.
*392 I also dissent from the majority’s conclusion that plaintiff may not pursue a common-law claim for negligent retention. As noted by the majority, MCL 37.2803 provides that “[t]his act shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state.” As explained in Hersh v Kentfield Builders, Inc, 385 Mich 410, 412; 189 NW2d 286 (1971), under the common-law claim of negligent retention, an employer may be held liable for an intentional tort committed by one of its employees if the employer “ ‘knew or should have known of his employee’s propensities and criminal record before commission of an intentional tort....’” (Citation omitted.)
The majority asserts that plaintiff may not pursue a common-law negligent retention claim because the claim is premised entirely on “the statutorily based tort of sexual harassment.” Ante at 382 (emphasis deleted). I disagree. Plaintiffs negligent retention claim is not premised solely on “the statutorily based tort of sexual harassment,” but also implicates other torts such as assault and battery. Therefore, I would allow plaintiff the opportunity to establish her negligent retention claim and let the jury determine whether she has successfully done so.
CAVANAGH, J. (dissenting). I believe there is ample evidence for a jury to decide the issue of whether defendant had adequate notice that one of its supervisors, Daniel Bennett, had the propensity to sexually harass and assault women and was indeed doing so. Accordingly, because plaintiff presented sufficient evidence of notice, a jury should be allowed to determine plaintiffs claims against defendant for sexual harassment under the Civil Rights Act (CRA), MCL 37.2101 et *393 seq., and negligent retention. Therefore, I respectfully dissent from the majority’s decision dismissing all of plaintiffs claims.
I. THERE IS SUFFICIENT EVIDENCE THAT DEFENDANT HAD NOTICE OF BENNETT’S PROPENSITY FOR SEXUAL HARASSMENT AND ASSAULT AND ALLEGATIONS THAT HE WAS INDEED SEXUALLY HARASSING AND ASSAULTING WOMEN IN THE WORKPLACE
Plaintiff presented sufficient evidence that defendant had adequate notice of Bennett’s propensity to sexually harass and assault women and the pervasiveness of the existing sexual harassment perpetrated by Bennett. Bennett was one of defendant’s supervisors. In 1995, defendant learned that Bennett had exposed himself to three teenage girls while driving one of defendant’s vehicles. Bennett was convicted of indecent exposure.[1] While the facts related to this conviction alone may not be enough to put defendant on notice, defendant received other information that Bennett was sexually harassing women.
In late October 1998, Justine Maldonado, another of defendant’s employees, reported to a production manager that Bennett was sexually harassing her.[2] Maldonado also told another of defendant’s employees, David Ferris, about the sexual harassment. Ferris told Jerome Rush, defendant’s director of labor relations at defendant’s Wixom plant.
Maldonado’s complaint was not the first complaint of this nature against Bennett. As detailed in Elezovic v Ford Motor Co, 472 Mich 408, 433, 442-444; 697 NW2d 851 (2005) (CAVANAGH, J., concurring in part and dissenting in part; WEAVER, J., concurring in part and *394 dissenting in part), defendant also had notice in October 1998 that Lula Elezovic had stated that Bennett sexually harassed her. This information was shared with the director of labor relations-i/ie same director of labor relations who learned of Maldonado’s complaints. Further, other coworkers had also discussed sexual harassment involving Bennett with the director of labor relations.[3]
An employer can only avoid liability if it adequately investigates a claim of sexual harassment and takes prompt and appropriate remedial action. Radtke v Everett, 442 Mich 368, 396; 501 NW2d 155 (1993). Managers and the director of labor relations knew of claims that Bennett was sexually harassing women. These claims, along with knowledge that Bennett had exposed himself to three teenage girls, are sufficient evidence to allow a jury to determine whether, under the totality of the circumstances, defendant adequately investigated these claims and took appropriate remedial action. See Chambers v Trettco, Inc, 463 Mich 297, 312, 318-319; 614 NW2d 910 (2000).
II. PLAINTIFF CAN BRING A CLAIM AGAINST DEFENDANT UNDER THE CRA
The CRA, in MCL 37.2201(a), defines “[e]mployer” as “a person who has 1 or more employees, and includes an agent of that person.” An employer is prohibited from discriminating against an individual by doing any of the following:
*395 (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.
(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system. [MCL 37.2202(1).]
“Discrimination because of sex includes sexual harassment.” MCL 37.2103(i).
Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
(Hi) The conduct or communication has the purpose or effect of substantially interfering with an individual’s employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or , housing environment. [MCL 37.2103(i)(iii).]
The majority acknowledges that the CRA allows for claims by nonemployees, but the majority states that “unless an individual can establish a genuine issue of material fact that an employer affected or controlled the terms, conditions, or privileges of his or her employment, a nonemployee may not bring a claim under the *396 CRA.” Ante at 385. According to the majority, plaintiff cannot bring a claim against defendant because “[pjlaintiff was hired, paid, and subject to discipline by AVI [Food Systems]. AVI placed plaintiff in the Wixom plant and had the sole authority to move her to different cafeterias or even to another plant.” Ante at 389-390. The majority’s application of the statute in this case iignores the specific language of the statute.
MCL 37.2202(l)(a) states that an employer cannot “otherwise discriminate agáinst an individual with respect to ... a term, condition, or privilege of employment . . ..” Discrimination includes sexual harassment. MCL 37.2103(i). Sexual harassment includes creating a sexually hostile or offensive work environment, MCL 37.2103(i)(iii), and this is exactly what defendant, through its supervisor Bennett, allegedly did to plaintiff.
Defendant’s supervisor, Bennett, did not merely have the ability or authority to affect a condition of plaintiffs employment, he allegedly did so because plaintiff alleged Bennett’s conduct created a sexually hostile work environment at plaintiff’s workplace. Notably, defendant was the only one who had the authority to control Bennett and, therefore, affect a condition of plaintiff’s employment. The CRA prohibits sexual harassment by an employer or an employer’s agent. Bennett was defendant’s agent when he allegedly sexually harassed plaintiff. Therefore, plaintiff can bring a claim against defendant for sexual harassment under the CRA.[4]
*397 III. PLAINTIFF CAN BRING A CLAIM AGAINST DEFENDANT FOR NEGLIGENT RETENTION
MCL 37.2803 states that the CRA “shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state.” When a statute provides a remedy for enforcement of a common-law right, it is cumulative and not exclusive. Pompey v Gen Motors Corp, 385 Mich 537, 552-553; 189 NW2d 243 (1971). The passage of the CRA did not abolish plaintiffs right to bring a negligent retention claim against defendant.
As stated by plaintiffs counsel during oral argument, Bennett’s conduct, while indeed sexual harassment, was also “classic assault and battery, [a] common law tort.” Plaintiffs complaint also alleged that Bennett posed a “known danger to women” and “sexually assaulted” plaintiff. Plaintiffs claim that Bennett grabbed her and tried to put his tongue in her mouth, as well as Maldonado’s claims that Bennett assaulted her and exposed himself to her and Elezovic’s claims that Bennett assaulted her, certainly qualify as assaultive behavior. See, e.g., Radtke, supra at 395 (sexual assault can be sexual harassment that creates a hostile work environment).
Plaintiff has presented sufficient evidence that defendant was aware of Bennett’s propensity to sexually harass and assault women and that defendant negligently retained Bennett in light of this information. See Hersh v Kentfield Builders, Inc, 385 Mich 410, 412, 415; 189 NW2d 286 (1971). Accordingly, I believe that plaintiff can present a claim for common-law negligent retention to a jury, and the jury should decide whether defendant acted reasonably.
IV CONCLUSION
I believe that plaintiff presented sufficient evidence *398 that defendant had adequate notice of Bennett’s propensity to sexually harass and assault women and that Bennett was indeed doing so in the workplace. It is then a question for the jury whether defendant’s subsequent conduct was reasonable under the circumstances. Accordingly, I would reverse the decision of the Court of Appeals in part and allow plaintiff to proceed on her claim under the CRA. I would also affirm the decision of the Court of Appeals in part and allow plaintiff to proceed on her claim for negligent retention.
Kelly, J., concurred with Cavanagh, J.

 MCL 37.2101 et seq.

 This conviction was later expunged.

 The production manager was also Maldonado’s uncle.

 Interestingly, in yet another case involving Bennett, Perez v Ford Motor Co, unpublished opinion per curiam of the Court of Appeals, issued March 10, 2005 (Docket No. 249737), slip op at 3, the Court of Appeals notes, “Defendant admits that the proper procedure for reporting a sexual harassment claim was to report to the labor relations department or a UAW committeeperson.” (Emphasis added.)

 Contrary to the majority’s presentation of the dissent’s position, see ante at 389 n 14, defendant would be hable only if it had notice and did not adequately investigate the claim and take prompt and appropriate remedial measures, just as in all other hostile work environment sexual harassment cases.