*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AD FARR LLC,

        Plaintiff-Appellant,

v

FAURECIA AUTOMOTIVE SEATING INC, and
JANI-KING OF MICHIGAN INC,

        Defendants-Appellees,

and

JANI KING OF FARMINGTON HILL LLC,

        Defendant.

UNPUBLISHED
July 22, 2025
11:58 AM

No. 370679
Wayne Circuit Court
LC No. 23-003874-CD

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this action involving a claim of retaliation under Michigan's Elliot Larson Civil Rights Act (ELCRA), MCL 37.2201(a), plaintiff, AD Farr LLC, appeals by right the order of Wayne Circuit Court granting the motions to dismiss filed on behalf of defendant Faurecia Automotive Seating, LLC and defendant Jani-King of Michigan, Inc. pursuant to MCR 2.116 (C)(8) (failure to state a claim). We affirm.

## I. FACTUAL BACKGROUND

Plaintiff alleges that defendants' termination of their business relationship with his company was retaliatory under the ELCRA, as the termination followed plaintiff's opposition to discriminatory behavior. Plaintiff, a cleaning business owned by African American entrepreneur Andre Farr, entered into a franchise agreement with defendant Jani-King in about 2018, through which plaintiff provided cleaning services, including at an automotive plant operated by Faurecia. In 2021, Faurecia hired Eric Chatfield as director of operations at its Highland Park facility. Chatfield allegedly made racist remarks toward Farr, such as "referring to African American

-1-

people as 'homeboys', asking Andre Farr when they were 'getting barbecue', and telling [Farr] that he would take [him] 'where all the homeboys go and we can go to Slows', a barbecue restaurant in Detroit." Farr reported these comments to Jani-King in June 2022 but Jani-King did not take any action. In July 2022, Farr directly confronted Chatfield, who then allegedly began to treat him more harshly, impairing Farr's ability to perform his cleaning duties at Faurecia. In August 2022, Chatfield, on behalf of Faurecia, requested that Jani-King terminate plaintiff's contract. Faurecia and Jani-King subsequently ended their relationship with plaintiff. As a result, Jani-King also stopped providing plaintiff with new jobs, allegedly resulting in significant financial loss to plaintiff.

In March 2023, Farr filed a lawsuit in his individual capacity against Faurecia and Jani King for discrimination and retaliation in violation of the ELCRA, MCL 37.2301 and MCL 37.2701, respectively. The trial court determined that Farr lacked standing to sue in his individual capacity because he was not a party to the contracts that were terminated by Faurecia and Jani King. Farr was then granted leave to amend his complaint to pursue his ELCRA claim on behalf of his company, AD Farr LLC, in which he omitted his claim of discrimination.

Faurecia moved to dismiss plaintiff's complaint pursuant to MCR 2.116(C)(8), arguing that plaintiff did not state a claim of retaliation because Faurecia was not plaintiff's employer or a place of public accommodation. Accordingly, plaintiff did not engage in protected activity when it opposed Chatfield's remarks, and Faurecia did not take adverse action against plaintiff when Faurecia terminated their commercial agreement. Similarly, Jani-King moved for dismissal of plaintiff's complaint pursuant to MCR 2.116(C)(8), making substantially similar arguments. The trial court granted defendants' motions and dismissed plaintiff's claim. This appeal followed.

II. STANDARDS OF REVIEW

A motion for summary disposition under MCR 2.116(C)(8) tests a complaint's legal sufficiency. *Jeffrey-Moise v Williamsburg Towne Houses Coop*, *Inc,* 336 Mich App 616, 623; 971 NW2d 716 (2021). "A motion for summary disposition under MCR 2.116(C)(8) is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery." *Id*. When considering a motion made under this rule, this Court accepts "all well-pleaded factual allegations as true to determine the legal sufficiency of the complaint." *Farish v Dep't of Talent and Economic Dev*, 336 Mich App 433, 439 n 3; 971 NW2d 1 (2021).

This Court also reviews issues of statutory interpretation de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011). "The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). The statute must be read as a whole, with the words of the statute providing the most reliable evidence of the Legislature's intent. *Id*. "When the language of a statute is clear, it is presumed that the Legislature intended the meaning expressed therein." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015). "[T]he policy behind a statute cannot prevail over what the text actually says." *Elezovic v Ford Motor Co*, 472 Mich 408, 420; 697 NW2d 851 (2005).

III. ANALYSIS

On appeal, plaintiff argues that the trial court erred by requiring that, to survive a motion to dismiss its retaliation claim pursuant to MCR 2.116(C)(8), plaintiff must establish that defendants either have an employment relationship with plaintiff or be a place of public accommodation. We disagree.

The ELCRA is a Michigan statute prohibiting discrimination based on certain protected characteristics, including race:

> The [EL]CRA is composed of eight articles that serve distinct purposes. Article 1 consists of definitions that apply to the entire act. The discriminatory actions prohibited by the [EL]CRA are set forth in articles 2 through 5, which individually contain definitions and rules only applicable to the type of discrimination addressed in that particular article: article 2 prohibits employment discrimination, article 3 prohibits discrimination in places of public accommodation, article 4 prohibits discrimination in educational institutions, and article 5 prohibits housing discrimination. There are three remaining articles: article 6 establishes the civil rights commission and its procedures, article 7 prohibits retaliation against a person who has taken action in opposition to a violation of the [EL]CRA, and article 8 provides additional rules for claims brought under the [EL]CRA. [*Rymal v Baergen*, 262 Mich App 274, 328-329; 686 NW2d 241 (2004) (K. F. KELLY, J., concurring in part and dissenting in part).]

In general, then, violations of the ELCRA fall into one of four categories of discrimination: employment, places of public accommodation, educational institutions, and housing. Relatedly, Article 7 applies when a person is retaliated against for opposing one of these types of discrimination.

Plaintiff alleges only retaliation against each defendant. "All that is required to state a claim of retaliation under the ELCRA are allegations that (1) the defendant took an adverse action against the plaintiff and (2) there is a causal link between the adverse action and a protected act." *Miller v Dept of Corr*, 513 Mich 125, 134; 15 NW3d 129 (2024).

Plaintiff did not allege and the record does not support that either defendant is a place of public accommodation. Accordingly, the only type of protected activity or adverse actions that could have occurred in this case must involve the context of employment discrimination. Turning, then, to the protected activity prong of a retaliation claim, plaintiff does not appear to allege or argue on appeal that either defendant employed plaintiff, a limited liability company. Indeed, the record supports that plaintiff entered into a franchise contract with Jani-King and a customer relationship with Faurecia.

However, to clarify, for a claim of *retaliation*, the defendant need not be the plaintiff's employer. MCL 37.2701(a) states:

> *Two or more persons* shall not conspire to, or *a person* shall not:

(a) *Retaliate* or discriminate against *a person* because *the person* has opposed a violation of this act, or because *the person* has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [Emphasis added.]

Pursuant to MCL 37.2103(h):

"Person means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, this state or a political subdivision of this state or an agency of this state, or *any other legal or commercial entity*. [Emphasis added.]

Plaintiff alleged that each party is a limited liability company. As companies, plaintiff and defendants all fit within the definition of "person." Accordingly, despite that neither defendant is plaintiff's employer, defendants could theoretically retaliate against plaintiff under the ELCRA, and plaintiff is entitled to bring a claim for retaliation. See MCL 37.2801(1); *InterVarsity Christian Fellowship/USA v Bd of Governors of Wayne State Univ*, 413 F Supp 3d 687, 697 (ED Mich, 2019) (interpreting the ELCRA's definition of "person" to allow corporations to assert claims of retaliation).

Nevertheless, to claim retaliation, plaintiff still must allege that it engaged in protected activity—i.e., either that plaintiff made a charge under the ELCRA or opposed a violation of the ELCRA. MCL 37.2701(a). The trial court correctly noted that plaintiff did not allege and the record does not establish that plaintiff "made a charge, filed a Complaint, testified, assisted or participated in any investigation, proceeding or hearing under [the ELCRA]." Therefore, plaintiff must have opposed a violation of the ELCRA's antidiscrimination provisions. See MCL 37.2701(a). In this regard, plaintiff alleged that Farr opposed Chatfield's racist remarks directly to Chatfield, an employee or agent of Faurecia, and Far reported the remarks to decision-makers at Jani-King:

Plaintiff engaged in conduct protected under the [ELCRA], MCL 37.2101 et seq., including, but not limited to, complaining of, reporting, and/or opposing the discriminatory conduct of the agents, servants, and/or employees of Defendant Faurecia specifically but not limited to Andre Farr's complaint(s) of Chatfield's racist conduct on behalf of A.D. Farr, LLC.

Not only did Plaintiff engage in protected activity directly to Chatfield, but also to individuals with decision-making authority at Defendant Jani King of Farmington Hills and/or Defendant Jani-King of Michigan, a Texas corporation.

The trial court determined that, as a matter of law, Farr's complaints did not constitute protected activity under the ELCRA. Regarding Faurecia, the trial court determined:

Plaintiff's brief repeatedly refers to reports that Plaintiff made via Mr. Farr opposing the alleged discriminatory conduct of the employees of Defendant Faurecia, but further states that Plaintiff was opposing racist, racist conduct from a contracting party.

-4-

Plaintiff keeps misrepresenting that Defendant Faurecia terminated the agreement, again there's no contract between these two parties and Plaintiff was not Defendant Faurecia's employee.

Thus Plaintiff's claims against Defendant Faurecia fail as a matter of law under a (C)(8) [motion] because Plaintiff has failed to assert a claim upon which relief can be granted against Defendant Faurecia, because these statutes are inapplicable to the facts presented since Defendant Faurecia is not a place of public accommodation or public service, nor Plaintiff's employer.

\* \* \*

Defendant Faurecia correctly states that Plaintiff did not engage in the protected activity required under the statute in order for Plaintiff to assert a viable claim as it relates to Defendant Faurecia. Again Defendant Faurecia correctly states that there must be a violation of the [ELCRA] that Plaintiff complained about in order for there to be a claim of retaliation as a result of that Complaint under MCL 37.2701(a) with respect to a place of public accommodation or public service.

Likewise, regarding Jani-King, the trial court determined:

Defendant Jani-King of Michigan states the Plaintiff alleges that Mr. Farr on Plaintiff's behalf complained to a Faurecia employee and someone from either Defendant Jani-King Farmington Hills and/or Defendant Jani-King of Michigan about a Faurecia employee's comments to Mr. Farr.

Defendant Jani-King of Michigan, Inc. correctly argues that these alleged complaints cannot constitute protected activity under the [ELCRA], because Plaintiff cannot establish that there was an employment relationship between either Plaintiff and Defendant Jani-King of Michigan or Mr. Farr and Defendant Jani-King of Michigan.

Without such an employment relationship, Plaintiff cannot establish that they had a reasonable belief that they reported an unlawful employment practice upon which Plaintiff's claim for retaliation could be based. Moreover, Defendant Jani-King of Michigan, Inc is not a place of public accommodation or public service such that Plaintiff cannot demonstrate that any alleged activity constitutes protected activity for purposes of the [ELCRA].

We agree with the trial court. As noted, the law recognizes that defendants potentially could *retaliate* under the ELCRA without being plaintiff's employer. The question, though, is whether either defendant could *discriminate* against plaintiff without being plaintiff's employer, such that the opposed conduct constituted a requisite violation of the ELCRA.

In the context of employment discrimination, at the time plaintiff filed its complaint, MCL 37.2202(1) provided in relevant part:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.[1]

MCL 37.2201, defines an "employer" as "a person who has 1 or more employees, and includes an agent of that person." MCL 37.2201(a). MCL 37.2202 thus prohibits racial discrimination with respect to "employment, compensation, or a term, condition, or privilege of employment" by a person with at least one employee against an individual.

In this case, plaintiff alleged that Faurecia is an automotive plant and that Faurecia hired Chatfield. Likewise, plaintiff alleged that Jani-King is a franchisor and commercial cleaning service company with "decisionmakers" and at least one "contact." Taking these allegations as true, *Farish*, 336 Mich App at 439 n 3, we conclude plaintiff adequately alleged that, although neither defendant is *plaintiff's* employer, each defendant is *an* employer under the ELCRA.

In this way, defendants could conceivably racially discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, even if

---

[1] Based on the facts of this case and arguments on appeal, we presume that the relevant ELCRA provision that plaintiff opposed a violation of is MCL 37.2202(1)(a). However, for completeness, we note that the other acts prohibited by employers are:

> (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.
>
> (c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system.
>
> (d) Treat an individual affected by pregnancy, childbirth, or a related medical condition differently for any employment-related purpose from another individual who is not so affected but similar in ability or inability to work, without regard to the source of any condition affecting the other individual's ability or inability to work. For purposes of this subdivision, a medical condition related to pregnancy or childbirth does not include nontherapeutic abortion not intended to save the life of the mother.

defendants did not employ that individual. See MCL 37.2201(a); *City of Wayne v Miller*, ___ Mich App ___; ___ NW3d ___, (2024) (Docket No 364138); slip op at 4. At this juncture, however, plaintiff's claim breaks down.

First, plaintiff is not an "individual." Although plaintiff meets the definition of a "person," the relevant employment-related antidiscrimination provision of the ELCRA does not use the term "person."[2] Instead, the Legislature chose to use the word "individual." The use of different terms generally suggests different meanings. *Miller*, ___ Mich App ___; slip op at 7. Therefore, we conclude that the use of the word "individual" in the context of MCL 37.2202(1)(a) precludes the type of alleged business-to-business discrimination opposed here by plaintiff. Therefore, there is no underlying protected act to support plaintiff's retaliation claim. See *Miller*, 513 Mich at 134.

Next, even if we interpret plaintiff's complaint as asserting a *third-party* claim of retaliation, the claim still fails. Although not clear, plaintiff may have intended to allege that defendants retaliated against *plaintiff* after plaintiff opposed employment discrimination against *Farr*. The antiretaliation provision that plaintiff relies on, MCL 37.2701(a), certainly provides a cause of action for such associational or "third-party" retaliation claims. See *Miller*, 513 Mich at 147. However, a claim of third-party retaliation still requires an allegation of opposing a violation of the ELCRA. *Id*. at 134.

As discussed, defendants, as employers, could theoretically discriminate against Farr, an individual, but only in the context of *Farr's employment*. See MCL 37.2202(1)(a). The complaint does not allege and the record does not establish that either defendant employed Farr. Accordingly, for either defendant to discriminate against Farr, plaintiff must have alleged "some form of nexus or connection between the employer and the status of the nonemployee." *McClements v Ford Motor Co*, 473 Mich 373, 386; 702 NW2d 166, opinion corrected on reh 474 Mich 1201; 704 NW2d 68 (2005). To put it more directly, "liability is contingent upon the employer's affecting or controlling that individual's work status. Accordingly, an employer can be held liable under the [EL]CRA for discriminatory acts against a nonemployee if the nonemployee can demonstrate that the employer affected or controlled a term, condition, or privilege of the nonemployee's employment." *Id*. at 386-387.

There are no allegations that Faurecia, as a customer of Farr's company, or Jani-King, as a contractor with Farr's company, affected or controlled Farr's work status. See *id*. Moreover, in light of these relationships, we do not believe that factual development could establish those elements. See *Jeffrey-Moise,* 336 Mich App at 623. Therefore, even if we interpret the complaint as asserting a third-party retaliation claim, there still is no underlying protected act. See *Miller*, 513 Mich at 134. Accordingly, the trial court did not err by dismissing plaintiff's claim against defendants.

---

[2] The only employment-related antidiscrimination provision that uses the term "person" is MCL 37.2202(1)(c), a provision pertaining to sex discrimination, which is not an issue in the present case. At any rate, the Legislature recently replaced the term "person" with "individual" in MCL 37.2202(1)(c). 2023 PA 6.

Because we have concluded that plaintiff cannot allege protected activity, we need not consider plaintiff's remaining arguments about whether defendants took adverse action.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan